UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-22590-CIV-ALTONAGA/Damian

**VANESSA HARPER**,

    Plaintiff,
v.

**THOMAS J. VILSACK**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Thomas J. Vilsack's Motion to Dismiss Second Amended Complaint [ECF No. 37], filed on January 12, 2024. Plaintiff, Vanessa Harper, filed a Response [ECF No. 38]; to which Defendant filed a Reply [ECF No. 39]. The Court has carefully considered the Second Amended Complaint ("SAC") [ECF No. 33], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff previously filed a Complaint [ECF No. 1] and an Amended Complaint [ECF No. 18] alleging discrimination by Defendant, her federal agency employer. (*See* Compl. ¶ 1; Am. Compl. ¶ 1). Her allegations focused on the conduct of her supervisor, the agency's South Florida Area Director ("the Director"), and his superiors. (*See* Am. Compl. ¶¶ 13, 19, 45–49). On December 5, 2023, the Court dismissed the Amended Complaint as a shotgun pleading and

because it contained unexhausted and preempted claims. (*See* Dec. 5, 2023 Order [ECF No. 32] 16). Plaintiff filed the SAC on December 15, 2023. (*See generally* SAC).

The SAC's factual allegations are largely unchanged from the version recounted by the Court in its previous Order (*compare* SAC ¶¶ 1–96 *with* Dec. 5, 2023 Order 1–4), except that Plaintiff now clarifies the timeline of her allegations as follows. According to Plaintiff, she complained about Defendant's discriminatory behavior by filing a charge with the Equal Employment Opportunity Commission ("EEOC") on July 7, 2022 (*see* SAC ¶ 7(a)); amended her EEOC charge with additional claims on August 19, 2022 (*see id.* ¶ 7(b)); and, after an investigation, received a Final Agency Decision on April 13, 2023 (*see id.* ¶ 7(c)). "Literally unable to cope or work under the extreme stress and unlawful conduct of Defendant," Plaintiff retired on December 31, 2022 under "threat[]" by Defendant that she was about to be terminated. (*Id.* ¶ 88 (alteration added)).

The SAC contains six claims: in Count I, Plaintiff alleges race discrimination (*see id.* ¶¶ 97–111); in Count II, she alleges sex discrimination (*see id.* ¶¶ 112–26); in Count III, she alleges unlawful retaliation based on Plaintiff's reporting of discrimination (*see id.* ¶¶ 127–42); in Count IV, she alleges unlawful termination based on the same (*see id.* ¶¶ 143–55); in Count V, she alleges disability discrimination based on Defendant's failure to accommodate (*see id.* ¶¶ 156–66); and in Count VI, she alleges retaliation based on Plaintiff's reporting of the conduct alleged in Count V (*see id.* ¶¶ 167–79). Counts I to IV arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (*See id.* ¶¶ 97–155). Counts V and VI arise under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (*See id.* ¶¶ 156–79).

Defendant contends each claim must be dismissed. (*See generally* Mot.). Defendant argues Counts I, II, III, and V fail to state claims for relief (*see id.* 5–10, 12–14); and that Count

IV should be dismissed for lack of subject-matter jurisdiction because Plaintiff failed to exhaust her administrative remedies (*see id.* 11–12).

## II.  LEGAL STANDARDS

***Rule 12(b)(6).***  Under Rule 12(b)(6), a party may seek dismissal by asserting that Plaintiff has failed "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6) (alteration added). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  When considering a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and takes the factual allegations as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

***Rule 12(b)(1).***  Under Rule 12(b)(1), a party may seek dismissal by asserting that the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  Subject matter jurisdiction must therefore be established before a case can proceed on the merits.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). It is presumed that a federal court lacks jurisdiction in a case until the plaintiff demonstrates the

court has jurisdiction over the subject matter. *See Kokkonen*, 511 U.S. at 377 (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)). And "because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously [e]nsure that jurisdiction exists over a case[.]" *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (alterations added; citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may present a facial or a factual attack to subject-matter jurisdiction. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "Facial attacks" to a complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (alterations adopted; quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion — the court must consider the allegations of the complaint to be true." *Id.* (citation omitted). In contrast, district courts confronted with a factual challenge under Rule 12(b)(1) "may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted).

### III. DISCUSSION

The Court considers each of Defendant's arguments in turn, concluding Plaintiff adequately states claims for relief except for the claim appearing in Count IV, which is not administratively exhausted. The Court explains.

### A.     Counts I and II

Defendant argues Counts I and II must be dismissed for failure to state a claim for either race or sex discrimination. (*See* Mot. 5–8). Specifically, Defendant argues Plaintiff neither provides "sufficient, particularized facts" regarding more favorable treatment of other employees (*id.* 6), nor adequately alleges a "convincing mosaic" permitting a reasonable inference of discrimination (*id.* 7 (citation and quotation marks omitted)). Plaintiff, naturally, says she has. (*See* Resp. 6–9). The Court agrees with Plaintiff.

Plaintiffs seeking to show discrimination based on circumstantial evidence can establish a *prima facie* case by demonstrating: (1) their membership in a protected class; (2) the existence of an adverse employment action taken against them; (3) their qualifications for the job in question; and (4) more favorable treatment of similarly situated employees. *See Lewis v. City of Union City* (*Lewis I*), 918 F.3d 1213, 1220–21 (11th Cir. 2019) (citation omitted). This is known as the *McDonnell Douglas* framework. *See id.* (citation omitted); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Defendant challenges Plaintiff's showing as to the framework's fourth element. (*See* Mot. 6–7).

As Defendant acknowledges, the *McDonnell Douglas* framework is not a pleading standard, and Plaintiff need not satisfy it to survive a motion to dismiss. (*See id.* 6 (citing *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514–15 (2002). Plaintiff's burden at this stage is to "allege sufficient facts to allow the court to draw the reasonable inference that the employer engaged in discrimination." *Andrews v. City of Hartford*, 700 F. App'x 924, 926 (11th Cir. 2017) (citations omitted). Still, courts often find *McDonnell Douglas* useful for determining whether a claim is adequately alleged.

*See, e.g.*, *Saint-Cyr v. Walgreen Co.*, No. 21-82066-Civ, 2022 WL 2103498, at *4–5 (S.D. Fla. May 4, 2022). The Court is satisfied Plaintiff has met her burden.

Defendant takes issue with what he describes as "general, non-specific allegation[s] that other, unidentified employees outside of Plaintiff's protected classes were given better treatment[.]" (Mot. 6 (alterations added)). This is a rather uncharitable reading of the SAC. True, Plaintiff does not provide names or titles for the employees she states were treated more favorably; but she does allege that the employees were male or not Black, employed in the same office, under the same supervisor, subject to the same policies, and engaged in identical conduct. (*See, e.g.*, SAC ¶¶ 36, 60–61). This is sufficient to satisfy the Eleventh Circuit's test for determining whether employees are "similarly situated[.]" *Lewis I*, 918 F.3d at 1227–28 (alteration added) (looking to whether other employees were "engaged in the same basic conduct (or misconduct) as the plaintiff"; "subject to the same employment policy, guideline or rule"; "under the jurisdiction of the same supervisor"; and similar in terms of "employment or disciplinary history" (citations omitted)).

It bears mentioning that even if Plaintiff had failed to adequately allege the existence of similarly situated employees, this would not have been fatal. *See Swierkiewicz*, 534 U.S. at 514–15; *Lewis v. City of Union City* (*Lewis II*), 934 F.3d 1169, 1185 (11th Cir. 2019) (noting that, even at summary judgment, "failure to produce a comparator does not necessarily doom the plaintiff's case" (citation and quotation marks omitted)). As explained, Plaintiff need only provide "sufficient facts to allow the court to draw the reasonable inference" of discrimination. *Andrews*, 700 F. App'x at 926 (citations omitted).[1] This, she has done.

---

[1] Defendant also says Plaintiff "fall[s] far short of painting a 'convincing mosaic' that her reprimands or termination was motivated by any kind of discrimination against her." (Mot. 7 (alteration added; citation omitted)). But the "convincing mosaic" standard is a summary judgment standard. *Tynes v. Fla. Dep't of Juvenile Justice*, 88 F.4th 939, 94647 (11th Cir. 2023).

Defendant calls the SAC "nothing more than legal conclusions and formulaic recitations" and, ultimately, a "short list of unremarkable facts." (Mot. 8). This, too, is uncharitable, especially given the Court's obligation to take the pleading's allegations as true and construe them in Plaintiff's favor. *See Brooks*, 116 F.3d at 1369.

Plaintiff alleges the Director subjected her to "an escalating and ongoing hostile pattern of discrimination, harassment, and retaliation" (SAC ¶ 19); despite having "no articulate basis, allegations, or policy violations for his repeated threats of termination" (*id.* ¶ 21). Plaintiff alleges the Director invoked racial stereotypes when criticizing her (*see id.* ¶¶ 28, 43); and refused to address her complaints or requests for transfer, despite granting such requests when made by male or non-Black employees (*see id.* ¶¶ 30–39). Further, Plaintiff alleges she was reprimanded for making requests and raising concerns that other non-Black employees also raised — without consequence — concerning an office-wide COVID policy. (*See id.* ¶¶ 57–62). In all, Defendant reprimanded Plaintiff twice and suspended her once. (*See id.* ¶¶ 52, 67, 75).

Taking these allegations as true and construing them in Plaintiff's favor, the Court concludes there are facts sufficient to support a reasonable inference of discrimination.

**B. Counts III and VI**

Defendant next argues Counts III and VI fail to state claims for retaliation under either Title VII or the Rehabilitation Act. (*See* Mot. 8–10). To state a retaliation claim under either statute, Plaintiff must show she engaged in statutorily protected activity, she was subject to an adverse employment action, and there was "some causal relation between the two events." *Thomas*

*v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (citation and quotation marks omitted); *see also Gooden v. IRS*, 679 F. App'x 958, 967 (11th Cir. 2017) (citation omitted).[2]

Defendant challenges Plaintiff's claims on two fronts. First, Defendant argues the conduct about which Plaintiff complains falls into the category of "trivial harms and petty slights that do not constitute adverse employment actions." (Mot. 9 (citations and quotation marks omitted)). Second, Defendant accuses Plaintiff of failing "to allege facts showing a causal link between her protected activity and any possible adverse employment action[.]" (*Id.* 10 (alteration added; citation omitted)). Plaintiff's Response is less than illuminating and mostly restates the SAC's allegations. (*See* Resp. 9–11). Nonetheless, the Court agrees with Plaintiff that she has sufficiently alleged both adverse employment actions and causation. The Court explains.

***Adverse employment action.*** Defendant is correct that much of the conduct Plaintiff describes resembles conduct that courts have found do not rise to the level of an adverse employment action. (*See* Mot. 9–10 (collecting cases)). But the Eleventh Circuit has specifically stated that

> mistreatment based on retaliation for protected conduct — for example, making or supporting a charge of discrimination — is actionable whether or not the mistreatment rises to the level of a tangible employment action . . . if the mistreatment "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (alteration added; quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The standard is a "contextual" one. *Id.* at 862 (citing *Burlington N.*, 548 U.S. at 69).

---

[2] Neither party addresses whether the elements of a *prima facie* case for retaliation are appropriately applied on a motion to dismiss (*see generally* Mot.; Resp.; Reply), and the Court does not decide the issue. Plaintiff's ability to establish a *prima facie* case reflects the sufficiency of her allegations. *Cf. Medina v. United Christian Evangelistic Ass'n*, No. 08-21930-Civ, 2009 WL 513012, at *2 (S.D. Fla. Feb. 27, 2009) (applying elements of *prima facie* case on motion to dismiss).

8

The SAC's allegations satisfy this standard. In Count III, Plaintiff alleges that, after she reported the Director to his supervisors, he "escalated" his harassment by, among other things, "increas[ing] the frequency of his harassing impromptu meetings and interactions" and "bring[ing] in his assistant . . . to also threaten [Plaintiff] in the same fashion[.]" (SAC ¶¶ 43, 51 (alterations added)). Construing the facts in Plaintiff's favor, the Court is persuaded this escalation "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan*, 955 F.3d at 861 (citation and quotation marks omitted).

Similarly, in Count VI, Plaintiff alleges she was unfairly denied the opportunity to work from home during a disabling COVID infection. (*See* SAC ¶¶ 169–72). According to Plaintiff, the Director issued her a written reprimand after she reported this denial as discriminatory, despite not having done the same for other employees who also questioned Defendant's COVID policy. (*See id.* ¶¶ 53–68, 174). After Plaintiff "timely complained, disputed and reported" this reprimand as potentially discriminatory, Defendant "escalated [his] unlawful activity" by issuing another reprimand and harassing her to the point of constructively terminating her. (*Id.* ¶¶ 64, 66 (alteration added); *see id.* ¶¶ 65, 67–88). This, too, satisfies the "well might have dissuaded" standard. *Monaghan*, 955 F.3d at 861 (citation and quotation marks omitted).

***Causation.*** The Court is further persuaded these allegations are sufficient to establish causation. "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citation and quotation marks omitted). Defendant argues that Plaintiff falls short of even this standard, emphasizing the lack of "temporal proximity" between Plaintiff's protected activities and the adverse employment actions he accepts as adverse. (Mot. 10). There are two problems with this argument.

9

First, as explained, the list of relevant conduct is not nearly as circumscribed as Defendant would like it to be. While the SAC is short on exact dates, the Court is not persuaded the four-month gap between Plaintiff's email to the Director's supervisor and her written reprimand is, as Defendant argues, the only period relevant to the causation analysis. (*See id.*). If nothing else, Plaintiff's filing of a complaint with the EEOC — which occurred after she emailed the Director's supervisor (*compare* SAC ¶¶ 45, 49 *with id.* ¶ 7(a)), and which she alleges also triggered a wave of retaliation (*see id.* ¶¶ 64–66) — was statutorily protected activity as well. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1278 (11th Cir. 2008). In fact, less than a month passed between the filing of Plaintiff's EEOC charge and her suspension. (*Compare* SAC ¶ 7(a) *with id.* ¶ 74); *see also Schmidt v. City of Atlanta*, 558 F. App'x 953, 955 (11th Cir. 2014) (noting that "a one-month gap can suffice to show a link" between an EEOC charge and termination (citations omitted)).

Second, as Plaintiff points out — and Defendant acknowledges — temporal proximity is but one of the ways Plaintiff can show causation. (*See* Mot. 10; Resp. 11). While the causation requirement "can be met by showing close temporal proximity[,]" a substantial delay is only legally dispositive "in the absence of other evidence tending to show causation[.]" *Thomas*, 506 F.3d at 1364 (alterations added; citations omitted).

As explained, Plaintiff has specifically and plausibly alleged — and the Court accepts as true — that the Director took certain, concrete actions to "escalate[]" his harassment of Plaintiff after she reported him. (SAC ¶¶ 43, 47, 51 (alteration added)). For Count III, this is sufficient to "raise a plausible inference of causation at the motion-to-dismiss stage." *Dipietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1293 (S.D. Fla. 2020). To dismiss the SAC "would be premature . . . without . . . the benefit of discovery," *id.* (alterations added; citation and quotation

10

marks omitted); and the Court will not make a definitive decision on the issue until summary judgment when the factual allegations are fleshed out — *assuming undisputed facts*; or, where the facts are disputed, the jury will do so following trial, *see Blanc v. City of Miami Beach*, 965 F. Supp. 2d 1350, 1356 (S.D. Fla. Feb. 17, 2012).

The same is true of Count VI, where Plaintiff alleges both that the Director disciplined and harassed her after she sought an accommodation for her disability and after she reported his refusal to provide it. (*See* SAC ¶¶ 52–68, 174–77). Indeed, the Director's written reprimand — although issued almost six months after Plaintiff sought an accommodation — specifically referenced her inquiries about Defendant's COVID policy. (*See id.* ¶ 52). At the motion-to-dismiss stage, these allegations are sufficient to raise an inference of causation. *See Dipietro*, 424 F. Supp. 3d at 1293.

### C. Count IV

Defendant's next argument is that the claim in Count IV must be dismissed because Plaintiff has not administratively exhausted her constructive termination claim. (*See* Mot. 11–12). "Prior to filing a Title VII action, [] a plaintiff must first file a charge of discrimination" with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (alteration added; citation omitted). A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (quotation marks and citations omitted). The limitation is a jurisdictional one. *See Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 413 (5th Cir. 1981).

The Court addressed this issue in its previous Order, noting that the relevant inquiry is into whether activities related to Plaintiff's charge were pending at the time of the alleged discharge. (*See* Dec. 5, 2023 Order 11–12). "Ancillary jurisdiction does not extend to a retaliatory discharge claim where the discharge occurred while the EEOC charge was still pending and no lawsuit is

pending." (*Id.* 12 (citations omitted)). Because the Amended Complaint contained neither the date of the Final Agency Decision nor the date of Plaintiff's resignation, the Court dismissed the constructive discharge claim for lack of jurisdiction. (*See id.*).

In the SAC, Plaintiff provides the missing dates: she resigned on December 31, 2022, and the EEOC issued its Final Agency Decision on April 13, 2023. (*See* SAC ¶¶ 7(c), 88). Plaintiff attempts to add a new consideration in her Response by asserting that the EEOC's investigation concluded a month before her discharge. (*See* Resp. 12). But she fails to plead facts related to the EEOC's investigation (*see generally* SAC); and the pleading controls here, *see Wennersten v. Comm. Diver Servs., N.A., Inc.*, No. 12-60975-Civ, 2012 WL 3230419, at *1 n.1 (S.D. Fla. Aug. 6, 2012) (noting that a plaintiff "may not amend his complaint through new allegations raised when responding to a motion to dismiss" (citations omitted)); *Erb v. Advantage Sales & Marketing LLC*, No. 11-cv-2629, 2012 WL 3260446, at *3 (N.D. Ala. Aug. 3, 2012) (citations omitted) (same). Once again, the Court cannot conclude that Plaintiff has met her burden of showing her claim was administratively exhausted.[3] Count IV is thus dismissed.

**D.  Count V**

Finally, Defendant argues Count V must be dismissed for failure to state a claim. (*See* Mot. 12–14). The Court previously dismissed similar claims for lack of jurisdiction because the claims were premised on a March 2022 COVID infection that Plaintiff did not bring to the EEOC's attention. (*See* Dec. 5, 2023 Order 12–16). This time, Plaintiff appears to base her Rehabilitation Act claims on the September 2021 infection that was included in her EEOC charge. (*See* SAC ¶¶ 52, 156–79; Mot. 14). Defendant argues Count V still does not state a claim, however, because

---

[3] For the reasons stated in its prior Order, the Court continues to find that Plaintiff bears this burden. (*See* Dec. 5, 2023 Order 10 n.5).

Plaintiff cannot show she was disabled or perceived as disabled. (*See* Mot. 12–14). As support, Defendant attaches emails — which he insists the Court can consider (*see* Reply 6–7) — showing Plaintiff told the Director in early October that her COVID infection was asymptomatic and posed no impairment (*see* Mot., Ex. 3, October 2021 Emails [ECF No. 37-3] 2).[4]

Even assuming these emails are properly before the Court, the most Defendant has done is undermine the strength of Plaintiff's allegations. The Court is unwilling to presume — to Plaintiff's detriment — that the attached emails are the entirety of Plaintiff's communications with Defendant. Plaintiff has specifically alleged that she was disabled by the infection and notified the Director, only for him to "intentionally exclude[]" these communications when issuing his written reprimand. (SAC ¶¶ 158–60 (alteration added)).

The fact that discovery may be needed for Plaintiff to demonstrate the truth of her specific, plausible factual allegations does not make the allegations conclusory. *See McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (defining "conclusory allegations" as those that are "no more than conclusions" and are instead merely "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" (alteration added; citations and quotation marks omitted)). It does, however, make any factual disputes inappropriate for resolution on a motion to dismiss under Rule 12(b)(6). *Cf. Blanc*, 965 F. Supp. 2d at 1356.[5]

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[5] As Defendant notes, Plaintiff cannot sustain this claim based purely on her COVID infection. (*See* Mot. 14 n.4 (collecting cases finding that a COVID infection alone is not a "disability")). To prevail, Plaintiff will have to show — as she has alleged — that her specific infection fit the definition of a "disability" under the Rehabilitation Act. (*See* SAC ¶ 158).

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, Thomas J. Vilsack's Motion to Dismiss Motion to Dismiss Second Amended Complaint **[ECF No. 37]** is **GRANTED in part**.  Count IV is **DISMISSED**.

**DONE AND ORDERED** in Miami, Florida, this 26th day of February, 2024.

*[signature]*

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record