# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-22590-CIV-ALTONAGA/Reid

**VANESSA HARPER**,

     Plaintiff,

v.

**THOMAS J. VILSACK**,

     Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Thomas J. Vilsack's Motion for Summary Judgment [ECF No. 49], filed on May 14, 2024. Plaintiff, Vanessa Harper, filed a Response [ECF No. 56]; to which Defendant filed a Reply [ECF No. 64]. The Court has carefully considered the record, the parties' written submissions,[1] and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

The relevant facts of this case are largely unchanged from the versions of events recounted in previous Orders dismissing portions of Plaintiff's Amended Complaint [ECF No. 18] and Second Amended Complaint ("SAC") [ECF No. 33]. (*See* Dec. 5, 2023 Order [ECF No. 32] 1–4; Feb. 26, 2024 Order [ECF No. 42] 1–2).[2] Briefly, Plaintiff asserts her federal agency employer

---

[1] The parties' factual submissions include Defendant's Statement of Material Facts [ECF No. 48] ("SOF"); Plaintiff's Response . . . to Defendant's Statement of Material Facts . . . and Additional Material Facts [ECF No. 57] ("Resp. SOF"); and Defendant's Response to Plaintiff's Statement of Additional Material Facts [ECF No. 65] ("Reply SOF").

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

discriminated against her on the basis of race, sex, and disability; and then retaliated against her for reporting the discrimination.  (*See generally* SAC).

To elaborate, Plaintiff alleges her supervisor harassed and discriminated against her repeatedly and, when she reported this conduct, subjected her to further harassment.  (*See id.* ¶¶ 19–94).  She states that during this time she contracted COVID and requested to work from home, as other employees were permitted to do.  (*See id.* ¶ 52).  Instead of being allowed to telework, Defendant rejected her request and, when she challenged the decision, used her actions as an excuse to further harass, reprimand, and eventually suspend her.  (*See id.* ¶¶ 52–62).  After filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff was allegedly further disciplined to the point of being forced to prematurely resign from her position. (*See id.* ¶¶ 64–94).

This action followed, and now, Defendant's request for summary judgment.  (*See generally* Mot.).

## II.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  Fed. R. Civ. P. 56(a). Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.  *See id.* 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court draws all reasonable inferences in favor of the party opposing

summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the Court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id.* (alteration added; quotation marks omitted; quoting Fed. R. Civ. P. 56(c)(1)).

### III.  DISCUSSION

Plaintiff states five claims for relief: in Counts I and II, she alleges discrimination (based on race and sex, respectively) under Title VII (*see* SAC ¶¶ 97–111, 112–26); in Count III, she alleges retaliation following her reporting of the conduct described in Counts I and II (*see id.* ¶¶ 127–42); in Count V, she alleges disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.* (*see* SAC ¶¶ 156–66); and in Count VI, she alleges retaliation based on her reporting of the conduct alleged in Count V (*see id.* ¶¶ 167–79).[3]  The Court begins with Plaintiff's Title VII discrimination claims, then turns to her Title VII retaliation claim, and concludes with her Rehabilitation Act claims.

#### A.  Title VII Discrimination Claims

Plaintiff brings two claims of discrimination under Title VII of the Civil Rights Act of 1964.  Title VII prohibits employers from "discriminat[ing] against any individual with respect to

---

[3] The Court dismissed Count IV due to Plaintiff's failure to exhaust administrative remedies.  (*See* Feb. 26, 2024 Order 11–12).

[her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C § 2000e-2(a)(1) (alterations added). Plaintiff alleges discrimination based on race and sex.  (*See* SAC ¶¶ 97–126).

The Court first addresses the applicable legal standard.  "[T]he ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 941 (11th Cir. 2023) (alteration added).  In the absence of direct evidence, the relevant inquiry on summary judgment thus becomes whether there is "enough circumstantial evidence to raise a reasonable inference of intentional discrimination[.]" *Id.* at 947 (alteration added; quotation marks and citation omitted).

Traditionally, plaintiffs seeking to rely on circumstantial evidence could survive summary judgment by satisfying the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973).  Under this framework, a plaintiff establishes a *prima facie* case of intentional discrimination by demonstrating "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (citations omitted).   Meeting these three elements entitles a plaintiff to a rebuttable presumption of intentional discrimination, which a defendant can rebut by offering evidence of a valid, non-discriminatory justification for the adverse employment action.  *See id.* at 1221.  A plaintiff then must show the defendant's reason was pretextual and the real reason for the employment action was discrimination.  *See id.* (noting this step "merges with the plaintiff's ultimate burden of

persuading the factfinder that she has been the victim of intentional discrimination" (alterations adopted; quotation marks and citation omitted)).

The Eleventh Circuit has recently emphasized, however, that "[a] plaintiff who cannot satisfy [the *McDonnell Douglas*] framework may still be able to prove her case with what [has] sometimes [been] called a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Tynes*, 88 F.4th at 946 (alterations added; citations omitted). Thus, the inability to satisfy individual elements of *McDonnell Douglas* "does not necessarily doom the plaintiff's case." *Id.* (quotation marks and citation omitted). "Indeed, the plaintiff will *always* survive judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* (alteration and emphasis added; quotation marks and citation omitted).

For Plaintiff, a federal-sector employee, yet another standard applies. As she acknowledges (*see* Resp. 10), "a federal-sector employee must show only that a protected characteristic played *any* part in her employer's process in reaching an adverse employment decision." *Buckley v. Sec'y of Army*, 97 F.4th 784, 794 (11th Cir. 2024) (emphasis in original). More to the point, the Eleventh Circuit has concluded that the *McDonnell Douglas* framework simply does not apply to federal-sector Title VII claims. *See id.* at 794–95.[4]

In his Motion, Defendant challenges: certain adverse employment actions forming the basis of Plaintiff's claims; whether a reasonable jury could conclude Defendant acted with

---

[4] It is less clear whether the convincing mosaic test applies to federal employees. *Compare Durr v. Sec'y, Dep't of Veterans Affs.*, 843 F. App'x 246, 247 (11th Cir. 2021) (explaining that both *McDonnell Douglas* and the convincing mosaic tests "no longer apply" to federal-sector employees (citations omitted)), *with Lewis v. Sec'y of U.S. Air Force*, No. 20-12463, 2022 WL 2377164, at *10 (11th Cir. June 30, 2022) (explaining that "a federal sector employee alleging Title VII . . . claims must still establish a *prima facie* case" and analyzing the plaintiff's claim under the convincing mosaic test (alteration added; citation omitted)). For now, the Court proceeds as if both the convincing mosaic test and the standard articulated in *Buckley* apply to Plaintiff.

discriminatory intent; and whether a jury could conclude similarly situated employees were treated more favorably than Plaintiff was.   (*See* Mot. 4–9).   Defendant also challenges Plaintiff's entitlement to the relief she seeks.   (*See id.* 14).   Plaintiff, naturally, disagrees with Defendant's position on all points.   (*See generally* Resp.).   The Court addresses each issue in turn.

***Adverse employment actions.***   Defendant first argues Plaintiff cannot base her claims on three of the adverse employment actions she identifies: an April or May 2022 letter of reprimand, a rejected request for a change in supervisor, and a March 2022 letter of reprimand.   (*See* Mot. 4–5).   His argument is two-fold.   First, Defendant argues that any claims related to the April or May 2022 letter and rejected change in supervisor were not administratively exhausted.   (*See id.*).   Second, he argues any claims related to the rejected change in supervisor and March 2022 letter fail because the actions were not sufficiently adverse.   (*See id.*).

Again, "a federal-sector employee must show [] that a protected characteristic played *any* part in her employer's process in reaching an adverse employment decision."   *Buckley*, 97 F.4th at 794 (alteration added; emphasis in original).   Further, "[a] federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action."   *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) (alteration added; citation omitted).

Plaintiff proceeds under two theories: direct discrimination and the creation of a hostile work environment.   (*See* SAC ¶¶ 97–126).[5]   The Court thus considers whether Defendant's arguments prevent Plaintiff from relying on the noted actions in pursuing either theory.

Beginning with the hostile work environment claim, Plaintiff is correct that employment

---

[5] Defendant states the SAC "does not contain a hostile work environment claim."   (Reply SOF ¶ 71).   This is clearly untrue.   (*See* SAC ¶¶ 106, 122).   To the extent Defendant wishes to argue Plaintiff should have separated her theories into separate counts, the Court has already rejected this argument.   (*See* Dec. 5, 2023 Order 7–8).

actions — even if not adverse — can be "relevan[t] to her overall claims" in light of "Plaintiff's [alleged] continuous and cumulative experiences of discrimination, retaliation, and harassment [.]" (Resp. 6 (alterations added); *see also id.* 5–6). Certainly, a hostile work environment claim may exist "even if the mistreatment does not rise to the level of a tangible employment action[,]" so long as "the mistreatment is sufficiently severe or pervasive that it can be said to alter the terms, conditions, or privileges of employment." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (alteration added; quotation marks and citation omitted).[6]

"Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a[] Charge of Discrimination in a timely fashion." *Smiley v. Ala. Dep't of Transp.*, 778 F. Supp. 2d 1283, 1294 (M.D. Ala. 2011) (alteration added); *see also Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003) ("[A] hostile work environment, although comprised of a series of separate acts, constitutes one 'unlawful employment practice,' and so long as one act contributing to the claim occurs within the filing period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" (alteration added; quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002))).

Against this backdrop, Defendant's arguments are both too early and too late. Defendant asks the Court to "immediately dispense with three of Plaintiff's alleged 'adverse employment actions' as insufficient predicates for any of her claims." (Mot. 4). But Plaintiff can raise and rely on all three actions — at least in the context of her hostile work environment claim. *See Monaghan*, 955 F.3d at 861.

---

[6] In this context, the Eleventh Circuit uses the terms "tangible" and "adverse" interchangeably. *Monaghan*, 955 F.3d at 860 (quotation marks and citations omitted).

As for exhaustion, that argument is — ironically — belated.  The exhaustion of administrative remedies is not properly raised on a motion for summary judgment but rather "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (quotation marks and citation omitted).  But, as already explained, a hostile work environment claim only requires one exhausted predicate event.  *See Smiley*, 778 F. Supp. 2d at 1294.  Thus, preventing Plaintiff from raising all unexhausted actions when bringing her hostile work environment claim is inappropriate under any standard.

Moving on to Plaintiff's direct discrimination claims, Plaintiff seems to concede that the April or May 2022 letter of reprimand cannot independently form the basis of a Title VII claim. (*See* Resp. 6).  She nevertheless argues that the March 2022 letter of reprimand and denied request for a change in supervisor both qualify as adverse employment actions sufficient to give rise to a Title VII claim.  (*See id.* 5–8).  The Court disagrees as to the first but agrees as to the second.

As to the letter of reprimand, Plaintiff offers no case law suggesting that a letter of reprimand alone is an adverse employment action.[7]  To the contrary, the Eleventh Circuit has emphasized that reprimands are not sufficiently adverse unless they result in some tangible and negative effect on employment.  *See, e.g.*, *Henderson v. City of Birmingham*, 826 F. App'x 736, 741 (11th Cir. 2020); *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013).  Plaintiff neither argues nor shows such an effect here.  (*See generally* Resp.).  Thus, she cannot rely solely on the reprimand as the basis for her Title VII claim.

As to the denied request, however, there are genuine disputes of material fact.  Defendant insists Plaintiff "never actually made a formal request to change her supervisor using the USDA's

---

[7] The sole case cited by Plaintiff on this point involves retaliation claims, an issue that is taken up separately. (*See* Resp. 5 (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998))).

formalized process," and, at most, "asked her EEO Counselor for assistance in securing a change in supervisor." (Mot. 4). Yet, in her affidavit, Plaintiff states that her EEO Counselor informed her "that the requests [for a transfer] were provided to management[,]" which "did not honor the request[.]" (SOF, Ex. 19, Harper Aff. [ECF No. 48-19] ¶ 70 (alterations added)). Defendant cites no case law suggesting the denial of a request cannot be discriminatory unless it moves through formal channels; he also does not deny he was aware of the request. (*See generally* Mot.; *see also* SOF ¶ 45). A genuine dispute thus remains as to whether a request was made and denied.

Moreover, while Defendant cites cases where courts found the denial of a particular request was not sufficiently adverse (*see also* Mot. 4–5; Reply 3–5), "[f]ailure to transfer an employee *can* qualify as an adverse action[,]" *Lanier v. Bd. of Trs. of Univ. of Ala.*, No. 12-cv-03820, 2014 WL 657541, at *7 (N.D. Ala. Feb. 20, 2014) (alterations and emphasis added; citation omitted). "Whether a particular failure to transfer qualified as an adverse action depends on the context and whether a reasonable person in the employee's situation would consider the action adverse." *Id.* (citation omitted). Here, assuming a request was made and denied, it is for a jury to decide whether the circumstances rendered the denial an adverse action. *See id.* (noting that where an employee "had a tense relationship" with her supervisor and was denied a transfer, "a reasonable person could consider [the] failure to transfer [] as an adverse action" (alterations added)).

To summarize, all three actions Plaintiff relies on can form the basis of her hostile work environment claim. But only the denial of her request for a change in supervisor can independently form the basis of a Title VII claim.

***Discriminatory intent.*** Defendant next argues Plaintiff's Title VII claims cannot stand because she "has not offered — and cannot offer — any evidence" of discriminatory intent. (Mot. 7). Again, "[a] plaintiff in a Title VII case can establish a claim of intentional discrimination by

presenting either direct or circumstantial evidence." *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010) (alteration added; citation omitted). According to Plaintiff, Defendant's differential treatment of her is circumstantial evidence, and she has "create[d] genuine issues of material fact as to whether" Defendant acted with discriminatory intent. (Resp. 11 (alteration added)). Defendant contends Plaintiff's theory of the case is based entirely on "mere conclusions and unsupported factual allegations" that are insufficient at summary judgment. (Mot. 8 (alteration adopted; quoting *Bald Mtn. Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). The Court disagrees with Defendant.

According to Plaintiff, she was treated differently from at least 11 other employees. (*See* SOF ¶ 65; Resp. SOF ¶ 65). Defendant does not directly dispute Plaintiff's assertions about those employees and their treatment. (*See generally* Mot.; Reply; SOF). Instead, he argues it is Plaintiff's burden to show the differential treatment was motivated by discriminatory intent. (*See* Mot. 6–8). As support, he cites *Terrell v. Secretary, Department of Veterans Affairs*, where the Eleventh Circuit held that a court did not err in granting summary judgment given the plaintiff failed to "create[] a genuine issue of material fact as to whether discrimination occurred[.]" 98 F.4th 1343, 1352 (11th Cir. 2024) (alterations added); (*see* Mot. 7–8).

In *Terrell*, the plaintiff "relie[d] [] on circumstantial evidence — namely, the fact that" the job she sought was ultimately offered to two individuals of different races and nationalities. *Id.* (alterations added). She "testified that discrimination was the only thing she could think of to explain her non-selection" and "point[ed] to discrimination claims that other employees filed . . . as . . . evidence of intent to discriminate." *Id.* (alteration adopted; other alterations added; quotation marks and citation omitted). The court concluded — and the Eleventh Circuit agreed — these facts were insufficient, "given the absence of record evidence otherwise[.]" *Id.* (alteration

added).

Here, Plaintiff is on more solid ground.  She points to at least 11 individuals of different races or genders who she claims were treated differently from her because they either received work-from-home accommodations that she was denied or were not disciplined for similar conduct. (*See* SOF, Ex. 10, Harper Interrogs. [ECF No. 48-10] 8–9, 13–19).[8]  This is enough to create a genuine dispute of material fact as to whether race might have played a role in Defendant's treatment of her.  *Cf. Palm Partners, LLC v. City of Oakland Park*, 102 F. Supp. 3d 1334, 1342 n.3 (S.D. Fla. 2015) ("Proof of discriminatory motive . . . can in some situations be inferred from the mere fact of differences in treatment." (alteration added; quotation marks and citation omitted)).  Moreover, this evidence creates a "convincing mosaic" of circumstantial evidence that is sufficient "for a reasonable factfinder to infer intentional discrimination in an employment action[.]"  *Tynes*, 88 F.4th at 946 (alteration added; quotation marks and citation omitted).

Of course, Defendant would prefer the Court reject any comparison to the employees Plaintiff describes; throughout his briefing, he distinguishes them and their underlying conduct. (*See* SOF ¶ 65; Mot. 8; Reply 5–6).  But these arguments are best directed at a jury, not the Court. *See Buckley*, 97 F.4th at 795.  Certainly, at trial, the jury can factor in the many differences Defendant points out.  (*See* SOF ¶ 65; Reply 5–6).  For the Court to do so in order to grant summary judgment, however, would require resolving factual disputes by weighing the evidence — tasks that must be left to the fact-finder.  *See Buckley*, 97 F.4th at 795; (Resp. SOF ¶ 65 (disputing portions of Defendant's factual statements); Reply 5–6 (disputing portions of Plaintiff's factual statements)).

---

[8] The analysis on this point overlaps with, but is ultimately not the same as, the discussion that follows on the use of these 11 employees as comparators.  After all, "it is possible that her comparators [a]re insufficient to establish a prima facie case yet still relevant to the ultimate question of intentional discrimination."  *Tynes*, 88 F.4th at 947 (alteration added; citation omitted).

What matters at this stage is that Plaintiff has "point[ed] to some behavior . . . that could allow a reasonable jury to infer that race factored into [Defendant's] decision-making process[.]" *Buckley*, 97 F.4th at 795 (alterations added). "That leaves the question as to" Defendant's actual motive. *Id.* "And that presents a jury question." *Id.*

**Comparator employees.** Defendant further argues Plaintiff cannot show "similarly situated" employees were treated more favorably than she was because she has not identified any "similarly situated" employees — or "in court-speak, a 'comparator.'" *Lewis*, 918 F.3d at 1217 (citation omitted). As an initial matter, the Court is not as convinced as Defendant is that, "under today's legal framework, a comparator is still required." (Mot. 8 (citation omitted)). Of course, nothing "suggest[s] that the comparator analysis . . . is inappropriate under the new standards." *Sec'y of U.S. Air Force*, 2022 WL 2377164, at *10 (alterations added; citations omitted).

Yet, the Eleventh Circuit has also been clear that "failure to produce a comparator does not necessarily doom the plaintiff's case," so long as the plaintiff survives summary judgment under the applicable standard: here, either by showing that her race or sex played a role in Defendant's actions or presenting a convincing mosaic of circumstantial evidence. *Id.* (quotation marks and citation omitted); *see also Tynes*, 88 F.4th at 947 ("[I]t is possible that [Plaintiff's] comparators were insufficient to establish a prima facie case yet still relevant to the ultimate question of intentional discrimination." (alterations added)). As explained, Plaintiff makes the necessary showings under both standards and is thus entitled to proceed, regardless of whether she can show adequate comparators.

To the extent the comparator analysis is relevant to this case, the Court is not persuaded Plaintiff's proffered comparators are inadequate. In the *McDonnell Douglas* context, a plaintiff and her comparators must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1229

(quotation marks and footnote call number omitted).   "[T]he sorts of similarities that will, in the main, underlie a valid comparison" include similarities in conduct or misconduct; governing policies, guidelines, or rules; supervising personnel; and employment or disciplinary history.  *Id.* at 1227–28 (alteration added; citations omitted).

As explained, Plaintiff puts forth at least 11 comparators.  (*See* Harper Interrog. 8–9, 13–19).  Defendant argues the comparators "variously do not share [Plaintiff's] supervisor, her title and job duties, nor did they engage in the same basic misconduct as Plaintiff."  (Mot. 9 (alteration added; citation omitted)).  But while there are differences between Plaintiff and her comparators, there are also material similarities.  (*See, e.g.*, Resp. SOF ¶ 65).  Plaintiff contends that eight of these comparators, like her, sought work-from-home accommodations related to COVID; and, unlike her, received them.  (*See* Harper Interrog. 8–9).  She further states that four of her comparators were, like her, accused of unprofessional or unbecoming conduct; but, unlike her, were not disciplined.  (*See id.* 13–19).

At a minimum, Plaintiff has created a jury question as to whether her comparators can shed light on the question of whether Defendant discriminated against her.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509–10 (1993) ("If . . . reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact does remain, which the trier of fact will be called upon to answer." (alteration added; emphases and footnote call number omitted)).[9]

To be sure, Defendant offers numerous and thorough explanations for why these employees

---

[9] While jurors need not determine whether a comparator is adequate under *McDonnell Douglas*, "the strength of [] comparator evidence is relevant to the ultimate question of intentional discrimination." *Tynes*, 88 F.4th at 947 (alteration added; citation omitted).  When such evidence is presented, "it is the jury's role . . . to determine how much weight [it] should be given." *Id.* (alterations added).

were treated differently.  (*See, e.g.*, SOF ¶ 65; Reply 5–6).  But again — and as Defendant well knows — the strength of and weight to be given the comparator evidence are questions of fact for the jury to decide. *St. Mary's Honor Ctr.*, 509 U.S. at 509–10.  For now, it is sufficient that the differences between how Plaintiff and other employees were treated allow a jury to reasonably infer discrimination; whether they should draw that inference is a question for the parties to address at trial and for the jury to resolve — not for the Court to answer by summary judgment.[10]

  ***Injunctive relief.***  Finally, Defendant briefly argues that because Plaintiff cannot "meet the burden of showing but-for causation as to any of her claims," she cannot seek "full relief."  (Mot. 14).  He insists she is only entitled to "injunctive or other forward-looking relief."  (*Id.* (citation omitted)).  Plaintiff, without any legal argument, asserts otherwise.  (*See* Resp. 17).

  Defendant relies largely on *Ford v. DeJoy*.  No. 20-cv-00778, 2021 WL 6113657, at *10 (N.D. Ala. Dec. 27, 2021); (*see* Mot. 14).  There, the court concluded that although *McDonnell Douglas* and the convincing mosaic test no longer apply to findings of liability, they "still apply in determining whether circumstantial evidence is sufficient to support a finding that a plaintiff is entitled to full relief" — for example, rehiring. *Ford*, 2021 WL 6113657 at *10.  Because Plaintiff does not respond to this argument, the Court assumes the point is correct.  (*See* Resp. 17).  Nonetheless, Defendant's argument fails on two fronts.

---

[10] In asking the Court to distinguish Plaintiff's comparators because they were disciplined for different reasons, Defendant notes that the letter of reprimand Plaintiff received explained she was being disciplined for unprofessional and unbecoming conduct.  (*See* Reply 6).  According to Plaintiff, several of her comparators were also accused of unprofessional and unbecoming conduct.  (*See* Harper Interrog. 13–19).  Of course, Plaintiff also argues this letter of reprimand was itself pretextual.  (*See, e.g.*, SAC ¶ 52).

 While Defendant insists that "Plaintiff's personal subjective opinion" is not enough "to show that Defendant's proffered reason for her discipline was pretextual" (Reply 6), a reasonable jury could infer pretext from the differential treatment asserted by Plaintiff.  As other courts have recognized, cases involving pretext are "only infrequently resolved on summary judgment because the credibility of the witnesses and the weight of the evidence, quintessential jury questions, are so central to any ultimate determination." *Hunter v. Mobis Ala., LLC*, 559 F. Supp. 2d 1247, 1258 (M.D. Ala. 2008) (quotation marks and citation omitted).

First, in *Ford*, the court denied summary judgment on the issue of liability and concluded there was "an open question" as to the relief available to the plaintiff.  2021 WL 6113657, at *10. It ultimately decided "[t]he question of relief [wa]s not yet ripe."  *Id.* (alterations added).  Here, the same scenario exists.  The Court has concluded "a triable issue on the liability question" exists, *id.* (emphasis omitted), and thus does not need to decide the scope of relief available to Plaintiff.

Second, even if the question were properly before the Court, Defendant would not prevail. Defendant does not identify what portions of the *McDonnell Douglas* framework or convincing mosaic test would preclude Plaintiff from obtaining full relief; instead, he largely relies on his assertion that Plaintiff cannot meet her lesser burden of showing that Defendant's actions were "taint[ed]" by discrimination.  (Mot. 14 (alteration added)).  The Court has already rejected that argument.

In any event, the Court has also concluded that Plaintiff has met her burden under the convincing mosaic test, and that her alleged adverse employment actions and comparators would be adequate under *McDonnell Douglas*.  This, too, leaves "an open question" as to the relief available to Plaintiff.  *Ford,* 2021 WL 6113657, at *10.

In short, Plaintiff has offered enough evidence for a reasonable jury to conclude Defendant discriminated against her.  *See Troupe v. DeJoy*, 861 F. App'x 291, 294 (11th Cir. 2021); *Buckley*, 97 F.4th at 795; *Tynes*, 88 F.4th at 947.  Defendant's attempts to undermine Plaintiff's showings of adverse employment actions, discriminatory intent, or comparator employees are unavailing; he can present them to the jury.  *See Buckley*, 97 F.4th at 795.  Consequently, summary judgment is not warranted on Plaintiff's Title VII discrimination claims.

**B.  Title VII Retaliation**

The  Court  next  turns  to  Plaintiff's  Title  VII  retaliation  claim.   Here,  too,  the  Court

concludes summary judgment is inappropriate.

Generally, "[t]o make a prima facie case of retaliation, [a plaintiff] must show that she (1) engaged in protected EEO activity and (2) suffered an adverse employment action, and (3) she must establish a causal link between the protected activity and the adverse action." *Terrell*, 98 F.4th at 1355 (alterations added; citation omitted). Relevant here, plaintiffs may also bring what the Eleventh Circuit has described as "a retaliatory-hostile-work-environment claim[,]" which "is somewhat of a hybrid of a traditional . . . hostile-work-environment claim and a traditional retaliation claim." *Buckley*, 97 F.4th at 799 (alterations added). To sustain such a claim, the plaintiff must show that, as retaliation, "her employer created or tolerated a work environment that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination and that environment rose to the level of a personnel action." *Id.* (alteration adopted; quotation marks and citation omitted).

Once again, the parties disagree over whether three of the actions Plaintiff identifies — two letters of reprimand and a denied request — could independently form the basis of a retaliation claim. (*See* Mot. 4–5; Resp. 4–9). While retaliation claims also require that an employment action be "materially adverse," in the retaliation context this means that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks and citation omitted). Adversity is measured by the "reactions of a *reasonable* employee" and "will often depend upon the particular circumstances." *Id.* at 68–69 (emphasis in original).

As explained, Plaintiff concedes the April or May 2022 letter of reprimand cannot be an independent basis for her retaliation claim. (*See* Resp. 6). Similarly, as before, the Eleventh Circuit has stated reprimands do not support a retaliation claim when they do not carry tangible

harm, which Plaintiff has not shown. *See Rayner v. Dep't of Veterans Affs.*, 684 F. App'x 911, 915 (11th Cir. 2017); *Bush v. Regis Corp.*, 257 F. App'x 219, 222 (11th Cir. 2007); *Summerlin v. M&H Valve Co.*, 167 F. App'x 93, 96–97 (11th Cir. 2006). But for the reasons already stated, the Court concludes a reasonable jury could find that the denial of a change in supervisor, in this context, would have dissuaded a reasonable worker from reporting discrimination. *See Rayner*, 684 F. App'x at 915 (explaining that, where an alleged action is not *per se* adverse, the court "must look at the entire context" of the action).

Separately, Defendant attacks Plaintiff's ability to show a causal nexus between her reporting actions and several other employment actions Defendant also deems insufficiently adverse. (*See* Mot. 11–13). As Plaintiff describes in her briefing, however, she has a more direct path to success in her retaliatory-hostile-work-environment claim. (*See* Resp. 14–16). According to Plaintiff, shortly after she made her first EEO complaint, her supervisor "increased summoning [Plaintiff] into countless impromptu meetings to verbally criticize her performance, threaten future reprimands, and to threaten her continued employment at USDA." (SAC ¶ 68 (alteration added); *see id.* ¶¶ 64–68). This allegation was included in Plaintiff's EEO complaint (*see* SOF, Ex. 22, Am. EEO Compl. [ECF No. 48-22] ¶ 9); and in an affidavit provided for the EEO investigation (*see* Harper Aff. ¶ 9).[11]

Defendant tries to minimize this conduct as mere "[m]icromanagement" and cites cases finding that frequent meetings or even threats of termination are not, on their own, always sufficiently adverse or dissuading. (Mot. 13 (alteration added; citations omitted)). This ignores

---

[11] Admittedly, Plaintiff's deposition testimony on this point was less than compelling; when asked about her interactions with her supervisor during the time when these meetings occurred, she repeatedly stated she could not recall any details beyond three, largely incident-free meetings. (*See* SOF, Ex. 1, Harper Deposition [ECF No. 48-1] 81:2–84:20). Yet, the Court is not persuaded that failing to recall details is equivalent — as Defendant argues — to "effectively disavow[ing] this claim[.]" (Mot. 13 (alterations added)).

the substance of Plaintiff's claim, which is that — shortly after she engaged in protected activity — her supervisor "threaten[ed] future reprimands" and "her continued employment[.]" (SAC ¶ 68 (alterations added)). If true, these meetings "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination[,]" *Buckley*, 97 F.4th at 799 (alteration added), and summary judgment is thus inappropriate.[12]

### C. Rehabilitation Act

Finally, the Court considers Plaintiff's claims under the Rehabilitation Act. This time, the Court agrees with Defendant that summary judgment is warranted.

"To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) [s]he has a disability, (2) [s]he is otherwise qualified for the position, and (3) [s]he was subjected to unlawful discrimination as a result of h[er] disability." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (alterations added; citation omitted). Under the Rehabilitation Act, "[a] disability . . . is a physical or mental impairment that substantially limits one or more major life activities." *Id.* (alterations added; citation omitted). "An employer unlawfully discriminates against an otherwise qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer." *Id.* at 1289 (citation omitted).

"In addition to imposing liability for failing to provide reasonable accommodations, the Rehabilitation Act also prohibits retaliating against an employee for engaging in protected activity." *Owens v. Gov.'s Off. of Student Achievement*, 52 F.4th 1327, 1337 (11th Cir. 2022) (citation omitted). "To establish a prima facie case of retaliation . . . , a plaintiff must show: (1) [s]he participated in a statutorily protected activity or expression; (2) [s]he suffered an adverse

---

[12] Because Plaintiff can show a causal nexus in at least one way, the Court does not reach Defendant's other causality arguments. (*See* Mot. 11–13).

action; and (3) there was a causal link between the adverse action and the protected activity of expression." *Williams v. Ala. Dep't of Indus. Rels.*, 684 F. App'x 888, 894 (11th Cir. 2017) (alterations added; citation omitted).

Plaintiff asserts both discrimination and retaliation.

**Discrimination.**   Defendant challenges three aspects of Plaintiff's requests to work from home: whether the requests (1) were reasonable considering the "essential functions" of Plaintiff's position; (2) "contain[ed] enough [information] to trigger Defendant's duties"; and (3) were "inherently unreasonable" because they "did not contain an end date." (Mot. 16–18 (alterations added)).   Plaintiff disputes Defendant's characterization of each part of her request. (*See* Resp. 18–19).   Because the Court agrees with Defendant's second argument, it does not reach the others.

To show that Defendant discriminated against her based on a disability, Plaintiff must show that Defendant had actual knowledge of that disability.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1183–86 (11th Cir. 2005).  Defendant argues Plaintiff's barebones communications with her supervisors were insufficient to put them "on notice of Plaintiff's disability," and the communications "did not identify any limitation or disability" at all.  (Mot. 17–18).  At the heart of Defendant's argument is his largely unrebutted assertion that Plaintiff "provided her supervisors only her COVID-19 testing results[.]"  (*Id.* 17 (alteration added)).

Certainly, providing one's supervisor with a positive COVID test is not sufficient, without more, to show that one is disabled.  *See Roman v. Hertz Local Edition Corp.*, No. 20-cv-2462, 2022 WL 1541865, at *7 (N.D. Cal. May 16, 2022) ("The federal courts mostly agree that a short-term COVID-19 infection does not qualify as an ADA disability." (collecting cases)).  Plaintiff must show that Defendant had actual knowledge of not only her COVID diagnosis, but also that her symptoms amounted to an ongoing disability.

In the SAC, Plaintiff alleges she communicated with her supervisor "regarding her continuing and symptomatic COVID status[.]" (SAC ¶ 160 (alteration added)). At the motion-to-dismiss stage, the Court accepted this allegation, especially considering Plaintiff's statement that these communications were "intentionally excluded" from Defendant's written reprimand. (*Id.*; *see also* Feb. 26, 2024 Order 13). But at summary judgment, Plaintiff "must rely on more than conclusory statements or allegations unsupported by facts." *Ferox, LLC v. ConSeal Int'l, Inc.*, 175 F. Supp. 3d 1363, 1374 n.9 (S.D. Fla. 2016) (citation omitted). Plaintiff has failed to do so.

Indeed, Plaintiff's earlier allegations as to Defendant's knowledge suggested she shared only her test results. (*See* SAC ¶ 160 (alleging Plaintiff's supervisor "was well aware of [her] condition, because Plaintiff promptly submitted her positive COVID test results to [] Defendant" (alterations added))). Since then, Plaintiff has not supported this claim; if anything, she has retreated from it.

In her affidavit, Plaintiff repeatedly states that she was symptomatic but stops short of stating that she informed Defendant, verbally or in writing, of any symptoms — much less symptoms amounting to a disability. (*See* Harper Aff. ¶¶ 16–20, 42–44). Similarly, in her Response, Plaintiff simply maintains — without any citation to the record — that she "provided COVID-19 testing results and her diagnosed condition, which should have sufficiently notified Defendant of her disability." (Resp. 18 (also stating that she "provided COVID-19 testing results to support her request")). In her Statement of Facts, Plaintiff concedes that, in an email to her supervisor, she "acknowledged that she did not display any symptoms, at that time" and relied instead on her and her husband's positive tests. (Resp. SOF ¶ 19; *see also id.* ¶¶ 13, 18 (mentioning positive tests but not symptoms), 84 (asserting that Plaintiff "became disabled . . . when she tested positive for COVID-19" (alteration added))).

CASE NO. 23-22590-CIV-ALTONAGA/Reid

On this record, the Court does not find a genuine dispute of material fact as to whether Defendant had actual knowledge of Plaintiff's disability.  And because there is no evidence that Defendant had knowledge of Plaintiff's disability, he could not have discriminated against her because of a disability.  *See Cordoba*, 419 F.3d at 1183–86.  Summary judgment is thus due to be granted on Plaintiff's discrimination claim under the Rehabilitation Act.

**Retaliation.**  This leaves Plaintiff's retaliation claim.  A retaliation claim under the Rehabilitation Act can survive summary judgment even in the absence of an actual disability, so long as the plaintiff had "a reasonable belief that [her employer] had violated the statutes." *Branscomb v. Sec'y of Navy*, 461 F. App'x 901, 906 (11th Cir. 2012) (alteration added).  Here, however, Plaintiff could not have had a reasonable belief that Defendant discriminated against her based on her disability if she failed to inform Defendant of that disability.  *Duldulao v. La Creperia Café, Inc.*, No. 11-cv-1413, 2011 WL 6840585, at *3 (M.D. Fla. Dec. 29, 2011) ("[W]ithout knowledge of the specific disability, discrimination on the basis of a disability is impossible to infer." (alteration added)).  Consequently, summary judgment is also appropriate on Plaintiff's retaliation claim under the Rehabilitation Act.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Thomas J. Vilsack's Motion for Summary Judgment **[ECF No. 49]** is **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** in Miami, Florida, this 26th day of July, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:      counsel of record